Thank you, Your Honors. May it please the Court, my name is Brad Condra, and I represent the appellant in this matter. I will watch the clock, but I would like to reserve two minutes of my time for rebuttal. All right. In this matter, the District Court erred when it found that the Planned Administrator had not abused its discretion when it elected not to award Mr. Rippentrop a thousand hours of service for the first five months of his employment. The core issue in this case is whether it was an abuse of discretion for this Planned Administrator to apply a 45-hour-per-week equivalency method instead of relying on Mr. Rippentrop's reliable records, the ones that he submitted. Those records were submitted on forms supplied by Oftedal. Obviously, we have a 115-hour discrepancy, right, is what we're talking about for him to have his five years. That's correct. And if abuse of discretion is the standard, and then looking to Montour to give us some contours on that, is there any evidence in the record that he was treated differently than anyone else? No, Your Honor, there is no evidence he was treated differently than anyone else, and likewise, there is no evidence that this has been construed consistently throughout the terms of the plan. In fact, if I could direct this Court's attention. Well, if there's equipoise on that point, don't you lose under abuse of discretion standard? I apologize. I couldn't hear the question. I said if there is equipoise on that issue, don't you lose? No. Why not? And this is precisely the issue in this case. One, this plan administrator has a fiduciary obligation, which is provided for in 29 U.S.C. 1101A sub 1, to construe the terms of the plan and the evidence in favor of vesting, in favor of the plan beneficiary. That's a fiduciary obligation that the Court missed in this case. That's a fiduciary obligation, frankly, that courts around the Ninth Circuit have been missing for a while. But isn't that fiduciary responsibility violated only if the administrator abuses its discretion? No. What case authority do you have to support your argument that the abuse of discretion standard is violated by a breach of fiduciary duty? I have no case law to specifically support the proposition. What I have is a section of the United States Code, which is the law that governs that fiduciary's responsibilities. And when he or she violates that law, they violate their duty as a matter of law. I mean, this is a, and I've cited this quote in my brief. This is a classic the tie goes to the runner case. If we look at the documents that Mr. Rippentrop submitted, those documents were documents that he kept contemporaneously. Each day he worked. This is not an employee that goes into the office each day. But that's precisely why the statute allows the employer to use equivalency methods, so the employer does not have to go and try to verify the records, determine whether or not they were padded, or the accuracy of them. That's precisely why the employer has the option to do the equivalence. I would acknowledge that, and I think there are two responses that I'd like to give you on that. One, the records here are the same kinds of records that this employer would rely on if its construction project came into question. These are records kept at its request. We can presume, I think pretty clearly, that they're not looking to keep the wood products industry in business. These records are there for a reason. They're presumed reliable for other purposes. The problem is they weren't used to pay the employee. Correct. If they were used to pay the employee, I think your argument would be stronger, but they weren't. So they weren't verified. They were kept, but they were never audited or verified to ensure the accuracy. Correct. They were accepted without exception for almost five years. For the purpose for which they were made, but they weren't made to calculate to the hour how much time he worked. That's correct. And I think this is where we get into the plain language argument, which is the core argument in this case. The plain language of the plan controls. The regulations set the floor beneath which the plan administrator may not go and the drafter of the plan may not go. But the plan drafter, and the employer in this case, is free to draft a plan that is more precise or that provides a better set of benefits. In this case, the plan provides, and it tracks with regulation, but it does not recite it. It provides the number of hours of service to be credited to the employee will be calculated on the basis of actual hours for which the employee is paid or entitled to payment. It's sophistry to argue that the employee was not. There are alternatives. There are alternatives that may legally be used by the employer to calculate the number of hours. Only if those are provided for in the plan. And the plan, that section I just read you, ends with a period. That's the end of the analysis. There is no discretion to move forward into the alternative if records are there. But the plan also contains a specific provision saying that the 45-hour equivalency method is to be used if the actual hours cannot be determined. That is correct. And the only time that plan provision comes into play is when the actual hours cannot be determined. These records, which this Court can find at ER 273 through 354, and I would encourage you to look at them, I can assure you that we have, are relatively detailed, and they set forth the hours. These aren't rounded hours. He shows up at work some days at 6.15. He works until 12.15. He takes a lunch. He goes back and works until 8.30 at night. And these hours are, I mean, at the end of the day, his only duty is to show that he worked at least 1,000 hours. Not that each of his hours can be precisely matched with the pay he received. The fact that it's essentially a sliding scale, the more hours he works, the less he essentially gets paid per hour, is inconsequential. Your client is in a sympathetic position. Absolutely, there's no question about it. But the abuse of discretion standard is a very difficult obstacle for you to overcome. Well, and I think in this case, if I could move on to another issue, I don't think the abuse of discretion standard applies here. I think there's a sufficient conflict of interest to warrant review by this Court under either a less deferential standard or in our position, we believe, no deference, de novo standard. What precisely is the conflict of interest to which you refer? The conflict of interest is the one that the district court recognized. There's at least a structural conflict. The same entity that funds the plan also administers the plan. That conflict was further perpetrated when the plan administrator who first denied Mr. Rippentrop's benefits was then again asked to review his own decision and decide whether he thought he got it right the first time. The same plan administrator reviewed the decision twice. There was no meaningful review. Now, what case says that because the same plan administration official reviews the request twice, that is more of a conflict of interest? What case says that? No case says that. It's codified. 29 CFR 2560.503 provides that a full and fair review requires that the decision on appeal of the adverse benefit determination be conducted by a different individual than the one who made the determination, inference also not their subordinate. You're up against some language in one of the circuits en banc cases, though, Abati. It says abuse of discretion review applies to the discretion granting plan even if the administrator has a conflict of interest. I mean, how do you get around that? Your Honor, I'd like to answer your question. I'm afraid I'm going to run into my. Answer the question and we'll deal with the rebuttal time. Thank you. You're suggesting it's not abuse of discretion, but we have an en banc case that says the very conflict that you're identifying that takes it out of abuse of discretion doesn't do so, that it's still reviewed for abuse of discretion. Your Honor, respectfully, I'm afraid that's not entirely the holding of the Abati or the Abati decision. Actually, I believe Judge Rawlinson concurred, had a concurring opinion in that case. It didn't prevail. Yet again. But that case recognizes that a conflict of interest is to be viewed as a factor. The abuse of discretion standard remains, but that abuse of discretion, the review of that abuse of discretion, or the review of the decision, rather, is tempered by each of these conflict of interest factors. And the case, as I read it, specifically recognizes that that standard in a flagrant abuse of discretion situation can go all the way to de novo. All right, counsel. Thank you. We'll give you two minutes for rebuttal. Thank you. May it please the court, counsel. My name is Shane Coleman. I'm here on behalf of the appellee in this case, the Aftadol company and their plan. Respectfully, this case is not a tie, and even if it was a tie, that tie would not go to the runner under established law of the circuit. Well, what would you do hypothetically? I mean, he does have sympathetic facts. I mean, what if it had been an hour? All right, your calculations gave him, he was short one hour, but his calculations gave him over that. Would it have been an abuse of discretion at that point? No. The plan administrator owes fiduciary duties in two respects here. One is to interpret the plan consistently with respect to all plan participants to safeguard assets. The other is to pay benefits or, in this case, establish vesting when that's appropriate. But there's two functions there. So, no. The difficulty is if you say if you're short an hour, we'll give you that. Then the next person will say, well, I'm only short two hours. So then you keep sliding it back. You have to draw a line at some point. That's your position? Absolutely. And to be clear, when we talk about, we're talking about a five-year cliff vesting period, where Mr. Rippentrop was short was on the front end. Not that that matters, but this was not the case of an individual who was fired or dismissed right before he was about to vest. This is on the front end. And, in fact, the plan at issue didn't even exist. That's not relevant, but it did not exist at the time that he worked there. Well, let me ask you this. What's your response to opposing counsel's observation that the very same person who made the original decision also made the review decision and, therefore, that's a violation of the law? What's your response to that? I think it's irrelevant. What's your response? Is that true, as a matter of fact? It is true. Oftedal is a relatively small company, perhaps large by Montana standards. So did he violate a statute by reviewing it? No. His own decision? Absolutely not. The purpose of the continued review or the appellate review, if you will, is to allow Mr. Rippentrop to submit additional information or to correct some sort of a misunderstanding. But if the law says a different person should review it, how is that compliance with the law if the same person reviews it? I apologize. I'm not familiar with the CFR portion that was cited, and I don't believe it was briefed before this Court. Should the reliability of the records that the appellant submitted make a difference? We're told that these are very precise records. It doesn't look like they were manufactured after the fact. They have different times. He mentions he came in at 6.15, 1.00 to 8.00. It looks like the records might be a reliable indicator of the hours that he worked. Should that be a factor here? Absolutely not. Why not? Because Oftedal, as a plan administrator, has discretion not only to interpret the plan but to administer the plan. Oftedal has chosen to administer the plan by calculating hours of service based upon payroll records. It made that decision. Payroll records are specifically enumerated as an example of records that may but need not be considered. What does the record show about whether he's been treated exactly like everyone else or whether other people have been treated differently? The record is thin. Again, this is a small company. This is an unusual individual who worked hourly for a short period of time then was moved to a salaried position. In the context of a small company like this, this is not the sort of claim that arises at all. There is absolutely no evidence that suggests that any hourly workers have had the purely hourly workers have had an equivalency method applied to them. There's likewise absolutely no evidence that salaried employees have had the regulation subsection 3A or paragraph 3A cited in the briefs applied to them. Does the record say this is the only time they've ever made this calculation or is it just doesn't say? I think it's fair to say it just doesn't say. There's an email in the record where the plan, the third-party administrator goes through and makes this calculation, as she reports she would normally do in the ordinary course of her business. But I can't point you to an affidavit that says we do this every single time because it doesn't arise. Or whether they've ever done it before. No. What they do do is make calculations, and the vast majority of those are not close calls. They're not 155 hours short over a five-year period. What they do do is they make those calculations through this third-party administrator, and she did that in this case the same way she does it in every other case. And there's no situation where they've considered specifically the, you know, other records other than payroll records for salaried employees or for any employees. And additionally, there's absolutely no evidence, contrary to what's in the briefs, that the other equivalency, the hours worked equivalency, with its attendant lower threshold of 870 hours, has ever been adopted by the plan or ever been applied by OFDAL. It sounds like you're saying that once the plan administrator chooses our equivalency formula, as has been done here, that there is never an obligation to look at any other evidence that may be contrary to that formula. It's never abuse of discretion just to stick to that formula. Is that your position? Yes. If the equivalency applies, the regulations say exactly that. That even if other, and it's quoted specifically in the briefs, but even if records are maintained for other purposes. Well, first off, the starting point is we're allowed to use whatever records the administrator is, use whatever records it chooses by regulation. It does not have to. And the regulation specifically states that even if such other records are maintained for other purposes, they do not have to be used. So going back to the question Judge Rawlinson posed, had these records been used as actual payroll records to figure what this fellow was owed in the first year of his employment, and there was no question about their reliability, and they showed hours in excess of what the formula provided, you'd say it's still okay to rely on the formula, no abuse of discretion, even though we know that the formula undercuts the number of hours that the appellant put in, in this case? With the caveat that this particular individual was an hourly worker for about a one-month period of time, those were calculated based on payroll records. After that, regardless of what the payroll shows, and frankly the payroll doesn't keep track of hours worked for salaried employees because salaried is typically equated with exempt under the FLSA laws, they don't track that because they don't track overtime. But with that caveat, absolutely. If for some reason the payroll records had been maintained and hours were tracked for salaried employees, Oftedal would have had absolutely no obligation to use those. It could have instead used the equivalencies because that's what the regulations permit, and Oftedal has discretion to interpret and administer its plan. In conclusion, I guess to touch on one other point, we don't think that the plan is at all ambiguous to the extent it is. We think the case law recited in our brief explains why that tie, if there was a tie, would not go to the runner in this case. But in fact, Oftedal's discretion includes discretion to interpret the plan. Counsel, what's your response to opposing counsel's position that there is an overarching fiduciary duty that was breached? I think the conflict of interest analysis, the abuse of discretion analysis, begins and ends with the Glenn case from the Supreme Court, which was decided while this matter was briefed at the district court, but which was considered by both the magistrate and the district judge. Glenn says that it is but one factor. A conflict of interest or a structural conflict, as this court used to phrase it pre-Glenn, is but one factor that goes into the mix to be analyzed. In this case, I think we then take that Glenn analysis that it's one factor. We look at the facts of this case. The facts of this case are Oftedal is the contributor of the capital stock into the ESOP plan that is at issue here. Under the terms of the plan document, it is absolutely impossible for Oftedal to ever get that stock back. Oftedal has no obligation to contribute stock to the plan in the first place. Once it contributes it, it would be impossible for Oftedal to get that stock back. And as one final difference from, say, a welfare plan where we're talking about a disability claim, there's no money. Regardless of the results here, there's no money that would get paid out as a result of the vesting immediately. What would happen is Mr. Rippentrop would be vested and subject to the terms of the plan, and could later down the road withdraw or cash in that stock. Again, at some date in the future, subject to those terms. This is not the situation where the administrator is looking at an immediate cash outlay if it allows a claim or, in this case, allows vesting. All right, thank you. I have nothing further. All right, thank you, counsel. Two minutes for rebuttal. Thank you, Your Honors. The bottom line in this case is, if Oftedal had wanted to draw a functional distinction between hourly and salaried employees, it should have done so. Plain language is cheap. It's very easy to insert this into the plan. In fact, the plan administrator, in trying to explain this to Mr. Rippentrop, said, according to Section 1.21c of the plan, hours of service are calculated on the basis of actual hours worked and paid. Then he goes on to say, if actual hours worked cannot be determined, and then he inserts language, as applicable to salaried employees. If the language had been clearer, he wouldn't have had to insert that. The simple fact is, is this can apply to salaried employees, like office staff, presumably Mr. Oftedal himself, who's probably not punching a clock or filling out records each day. Again, the tie goes to the runner here. There's a fiduciary obligation to construe these terms in favor of vesting. And that's all Mr. Rippentrop has asked his court to do. I think further underscoring the plain language argument is the summary plan description, which Mr. Rippentrop, without the help of an attorney, astutely cited to the plan administrator in his letter, says, you are accredited with an hour of service. For each hour, you receive compensation for your work for the employer. It gets no simpler than that. This is not complicated stuff. If they wanted to draw a distinction, they should have done it. They didn't do it. Now they have to construe those terms in favor of vesting. In closing, the plan administrator, when faced with a close call here, is again required to make a decision that benefits the claimant. That is the standard the courts keep missing. That standard is the overarching standard by which these administrators are measured. In this case, when faced with a clear choice, which is that email that we've all been referencing at AR 86 through 90, faced with a clear choice, one that would provide for vesting and one which would not, the administrator chose the one that would not and would effectively kick him out of the plan. All right, thank you, counsel. Thank you. I'm going to cede your time. Thank you to both counsel. The case is argued and submitted for decision by the court.
judges: Burns, Rawlinson, Callahan